UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-00056-JRS-TAB |
| | ) | |
| TUONG QUOC HO, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**Order on Motion to Withdraw Guilty Plea**

### I. Introduction

On October 31, 2022, the day his jury trial was set to begin, Tuong Quoc Ho pleaded guilty to 26 criminal charges, including wire fraud, identity theft, and money laundering, for his role in an ecommerce scheme. (Minute Entry, ECF No. 111.) The Court held a Rule 11 plea colloquy in lieu of the planned jury trial and accepted Ho's knowing and voluntary plea to each of the 26 counts. (Hearing Transcript, ECF No. 123.) Now before the Court is Ho's Motion to Withdraw his plea. (ECF No. 126.)

### II. Legal Standard

"[A] defendant may be permitted to withdraw his guilty plea before sentencing if he establishes 'a fair and just reason' to do so." *United States v. Lopez*, No. 20-2557, 2022 WL 17175133, at *3 (7th Cir. Nov. 23, 2022), *cert. denied*, 143 S. Ct. 1043 (2023) (citing Fed. R. Crim. P. 11(d)(2)(B)). But "the defendant bears a heavy burden of persuasion," and, because the defendant's statements at the plea hearing are presumed true, the Court may "reject . . . out of hand" any motion to withdraw that contradicts those statements. *Id.* (quoting *United States v. Collins*, 796 F.3d 829, 834

(7th Cir. 2015)); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand."). Or, more forcefully, "[a] defendant's protestation that statements freely made under oath when entering the plea were a pack of lies is not a 'fair and just reason' to start anew." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).

### III. Discussion

A. Issue 1

Ho begins by arguing that his plea was not voluntary because he did not understand the elements of the crimes alleged against him. (M. Withdraw 13–14, ECF No. 126.) That is not what he said at the plea colloquy. There, Ho said he did understand the charges against him. (Transcript 6 (Ho confirms linguistic understanding), 8 (Ho confirms he discussed charges with counsel), 10–11 (Court details individual charges and Ho confirms understanding), 12–15 (Court details potential penalties and Ho confirms understanding), 15–17 (Court details elements of charges and Ho confirms understanding), ECF No. 123).

Ho next suggests that he did not benefit from the advice of counsel as to his available defenses. (M. Withdraw 13–14, ECF No. 126.) At the plea colloquy, though, he swore he had "fully discussed the charges and the case in general" with his attorney and that he was "fully satisfied with the counsel, representation, and advice" he had received. (Transcript 8, ECF No. 123.) The Court also notes that Ho had the advice of other attorneys over the course of his trial preparation.

Next Ho suggests that he did not understand the plea agreement because it was never reviewed with him in his native language. (M. Withdraw 15, ECF No. 126.) Leaving aside the fact that Ho himself restarted negotiations for a last-minute plea bargain—which suggested and suggests to the Court that he took an active, participatory role in reaching a voluntary plea agreement—Ho at the plea colloquy repeatedly swore that he understood the proceedings. (Transcript 2 (Ho swears he can proceed without an interpreter, although a certified translator was present and available for his use any time he so needed and/or desired), 2 (Ho reminded that he may request the interpreter's help at any time), 7 (Ho reminded interpreter is available), 8 (Ho swears he understands he may speak with counsel privately), 9 (Ho swears he understands the plea agreement), 15 (Ho swears he understands elements of charges), 15 (Ho swears he understands that government would have to prove each element beyond a reasonable doubt), *etc. ad nauseum*.) Ho was provided with an interpreter and was frequently so reminded. (*Id.* at 2 (Ho confirms his understanding that interpreter is available), 6 (Court reminds Ho interpreter is available), 7 (same), 23 (same).)

Ho then argues that he did not understand the factual basis because it was not provided in his native language. (M. Withdraw 15, ECF No. 126.) At the plea colloquy he swore he was familiar with the factual basis and swore the facts were true. (Transcript 25–26, ECF No. 123.) Never once did Ho avail himself of the interpreter, ask for time to consider, or indeed give any sign he was hesitant, bewildered, or confused. (*See generally id.*)

3

In sum, Ho now raises a language barrier in his defense. But no barrier was in evidence during the plea colloquy. Ho seemed to be an active participant in his defense, not a passive or hapless foreigner in a strange land. And the Court, well aware of the potential problems with language, to include language being raised in post-plea proceedings as an argument regarding the sufficiency of the plea itself, was especially observant of Ho's demeanor and solicitous to ensure Ho both understood the proceedings and understood that he could get help if he did not. In addition to all the evidence of demeanor and comportment, there is the simple fact that Ho had an interpreter and never once sought her help. The Court will not hear him now to say that language was an obstacle. It was not, by all measures contemporaneous to the plea.

### B.  Issues 2, 3, 4, 5, & 6

Ho's next arguments invite the Court to conduct a trial on paper. Ho argues that he never used or knew he was using stolen credit card information in his ecommerce scheme; he invites the Court to believe that "none of the entities or people involved suffered any material consequence whatsoever." (M. Withdraw 19–20, ECF No. 126.) Ho also argues that he did not know that the personal information he used belonged to real people. (*Id.* at 20–21.) Ho argues that the presence of stolen credit card information on his electronic devices was unknowing; that there was no intent to defraud; that the government's allegations concern conduct outside the statute of limitations; that perhaps Ho's accounts were hacked; and that no evidence shows the stolen credit card information was usable. (*Id.* at 22–23.) Ho repeats his argument

4

that he did not know the personal information belonged to real people. (*Id.* at 23–24.) Ho further argues that because wire fraud cannot be proven, the money laundering charge also fails. (*Id.* at 24–25.)

Such arguments would have been appropriate for a jury. But it is too late to raise them now. At the plea colloquy, Ho swore that the stipulated factual basis in his plea agreement was true. (Transcript 26, ECF No. 123.) That factual basis provides that Ho used the internet to buy personal information belonging to real persons, (Plea Agreement ¶ 32, ECF No. 108); that Ho used "unauthorized and/or stolen credit cards" to buy and resell items, (*id.* ¶ 35); that Ho received over $1.5 million in proceeds from the scheme, (*id.* ¶ 37); that Ho knew the documents and IDs belonged to other, real people, (*id.* ¶ 40); that Ho affirmatively used the stolen information to make and maintain accounts, (*id.* ¶ 39–41); that Ho affirmatively sought to use the stolen information to make purchases, (*id.* ¶ 47); and that Ho's scheme ran into 2020, (*id.* ¶ 30). Maybe Ho did not do those things—he had a jury at hand, the venire waiting in the jury assembly room in the event Ho did not plead guilty or the Court did not accept his plea, to put the allegations to the test—but he swore that he did. He gives no new evidence to call into doubt his sworn admission of guilt. And, if it matters, the Court had good reason to believe Ho when he swore the factual basis was true and has good reason to discount these belated defenses. Unlike the defenses, the scheme described in the plea makes sense: Ho had to have working credit card information to buy items for resale; he had to have known that only real people have working credit cards; he had to have personal information matching the credit card

5

in order to maintain his accounts on the ecommerce platforms; and he had to have all the relevant data accessible electronically accessible so he could direct the scheme.

IV.  Conclusion

Ho's motion to withdraw advances no "compelling explanation," *Collins*, 796 F.3d at 834, for setting aside his plea.  *Accord Lopez*, No. 20-2557, 2022 WL 17175133, at *3 (calling for "compelling reason").  Indeed, it offers nothing new.  Ho had years of preparation and several different attorneys assisting his defense; he was ready for trial and the trial was ready for him.  Ho chose instead to plead guilty and swore to the Court that the plea was knowing and voluntary.  "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. . . . [W]hen the judge credits the defendant's statements in open court, the game is over."  *Stewart*, 198 F.3d at 987.  Ho's motion to withdraw, (ECF No. 126), is **denied.**

SO ORDERED.

Date: 12/11/2023

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

James A. Edgar
J. EDGAR LAW OFFICES, PC.
jedgarlawyer@gmail.com

MaryAnn Totino Mindrum
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
maryann.mindrum@usdoj.gov

6

James Marshall Warden
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
james.warden2@usdoj.gov